### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LOVE REPTILES, LLC, a Florida limited
liability company,

        Plaintiff,

vs.

KYLE WITTENBACH, an individual,
HEATHER WITTENBACH, an individual,
and WITTENBACH FARMS, L.L.C., a
Michigan limited liability company,

        Defendants.

Case No. 1:21-cv-

Hon.

**VERIFIED CIVIL COMPLAINT
AND JURY DEMAND**

---

Bruce A. Courtade (P41946)
Patrick E. Sweeney (P79822)
**RHOADES MCKEE PC**
Attorneys for Plaintiff
55 Campau Ave., N.W., Suite 300
Grand Rapids, MI 49503
(616) 235-3500
bcourtade@rhoadesmckee.com
psweeney@rhoadesmckee.com

---

### VERIFIED CIVIL COMPLAINT

Plaintiff, Love Reptiles, LLC, through its undersigned counsel, states as follows for its

Complaint against Defendants Kyle Wittenbach, Heather Wittenbach, and Wittenbach Farms, L.L.C.:

### INTRODUCTION

1.      This is a civil action brought by Plaintiff to recover possession of tangible personal

property—specifically live exotic snakes—and to recover damages for Defendants' breach of an

agreement with Plaintiff to raise and sell exotic snakes for profit.

2.      Plaintiff is a Florida limited liability company that breeds and sells snakes and other

reptiles.

3.      Plaintiff and Defendants entered into a husbandry agreement in mid-2016 whereby Plaintiff paid for physical improvements to real property owned by Defendants, and paid costs incurred by Defendants, relating to Defendants' development of a business infrastructure to breed and sell exotic snakes, as well as to raise rats for the purpose of feeding the snakes and to sell for profit.

4.      Pursuant to the Parties' agreement, Plaintiff remitted into Defendants' possession, care, and control a large collection of exotic snakes owned by Plaintiff.

5.      Plaintiff agreed to pay for the construction of facilities on Defendants' real estate, where Defendants were to raise and breed these snakes and assist in arranging for the sale of those snakes' offspring. Plaintiff and Defendants were to each receive 50% of the net profits from the sales, after Plaintiff had been reimbursed for its costs. Plaintiff supplied all of the snakes, and was to retain title to and ownership of all snakes supplied and bred.

6.      Around November of 2020, Defendants demanded a significant increase in their share of the future profits from the Parties' snake breeding enterprise.

7.      When Plaintiff refused the demand, Defendants notified Plaintiff that they were terminating the husbandry agreement.

8.      Plaintiff hired a specialized transportation company in December of 2020 to retrieve Plaintiffs' snakes and return them to Florida.

9.      Defendants, however, refused to remit the bulk of Plaintiffs' snakes, instead keeping the most valuable and best female breeder snakes for themselves.

10.     Defendants have also refused to give Plaintiff a complete inventory of the snakes in Defendants' possession, and has been marketing Plaintiff's snakes for sale.

11.     Defendants have also retained the benefits of the improvements and infrastructure that Plaintiff created on Defendant's real property, and most of the equipment and materials that

2

Plaintiff purchased. Defendants are now using those improvements, equipment, and materials to compete against Plaintiff.

12. Plaintiff requests that the Court restore to Plaintiff all of the snakes that it remitted to Defendants' control, as well as the offspring of those snakes in Defendants' custody.

13. Plaintiff further requests either return of, or compensation for, all of the equipment and materials that it purchased for the Parties' snake breeding enterprise and for which it has not been reimbursed.

14. Plaintiff further requests reimbursement for all of the personal expenses that Defendants charged to Plaintiff's credit card, for the costs of constructing improvements on Defendants' real property, and for all other personal cash advances Plaintiff gave to Defendants.

15. Plaintiff further requests an accounting of all sales made by Defendants, and reimbursement for any sale proceeds unreported to Plaintiff.

## PARTIES, JURISDICTION, AND VENUE

16. Plaintiff, Love Reptiles, LLC, is a Florida limited liability company with its principal office located at 4455 Military Trail, #201, Jupiter, FL 33458.

17. Defendants Kyle and Heather Wittenbach ("the Wittenbachs") are individuals residing at 199 Madison Road, Village of Stanwood, County of Mecosta, State of Michigan ("the Wittenbach Residence").

18. Upon information and belief, Defendant Wittenbach Farms, LLC ("Wittenbach Farms") is a Michigan limited liability company formed by Defendants on or about December 14, 2020, for the purpose of operating their own exotic snake breeding enterprise. Upon information and belief, Wittenbach Farms conducts its operations at real property owned by Kyle Wittenbach's father located at 2655 Lincoln Lake NE, Lowell, MI 49331, and also at the Wittenbach Residence.

19.     This Court possesses diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between the Parties, and the value of the amount in controversy exceeds $75,000.00.

20.     This Court possesses personal jurisdiction over the Defendants, and venue is proper in this Court, because the Defendants are Michigan residents residing in Mecosta County, and a Michigan limited liability company conducting business in Mecosta County, and the events giving rise to this action occurred within the Western District of Michigan.

## FACTUAL ALLEGATIONS

### I.     Plaintiff's Snake Breeding Business and Its Contract With the Wittenbachs

21.     Plaintiff is engaged in the business of breeding and selling exotic reptiles, including snakes, and has operated this business since its organization in 2013. Plaintiff is owned and operated by Brian and Deana Love.

22.     Brian Love is a founding board member of the United States Association of Reptile Keepers Florida, and holds licenses to possess, exhibit, and breed exotic animals.

23.     The exotic snake market is highly specialized. Individual snakes' values are largely based upon whether they carry unique genetic markers resulting in the snakes displaying rare or unusual colors and patterns.

24.     Female snakes of breeding age possessing unique genetic markers tend to be the most valuable. It takes several years for female snakes to reach sexual maturity.

25.     A female snake's value is also dependent upon whether that snake is able to produce offspring (whether it is a "proven breeder"). Some female snakes are incapable of doing so.

26.     Due to the numerous variables that determine a snake's value, an exotic snake's value can range from less than a hundred dollars to tens of thousands of dollars.

4

27.     Further, the exotic snake market is relatively small and insular, and places a high value on the business reputation of sellers. Participants in this market tend to only purchase reptiles from known and trusted sellers.

28.     In order for a new breeder to successfully "break into" the exotic snake market, the new breeder typically must be affiliated with, or "vouched for," by an existing, respected breeder.

29.     Brian Love is a highly regarded and respected seller and breeder in the exotic snake market, and his sales are based largely upon his reputation and name recognition in this industry both domestically and internationally.

30.     As part of its business, Plaintiff will sometimes enter into husbandry agreements with other individuals or businesses. Pursuant to these husbandry agreements, Plaintiff will transfer possession of animals into the care of Plaintiff's associates. These associates will care for the animals, facilitate breeding, and arrange for the marketing and sale of the animals' offspring.

31.     Sometime around July of 2015, Brian and Deana Love became acquainted with the Defendants through their mutual interest in snakes, particularly ball pythons. Kyle Wittenbach expressed to them an interest in learning about the breeding of ball pythons.

32.     At the time the Loves and Wittenbachs began corresponding, Mr. Wittenbach was living in Marquette, Michigan, and was employed as Northern Michigan University's golf coach.

33.     In 2016, Mr. Wittenbach was hired as Ferris State University's golf coach and the Wittenbachs relocated to Stanwood, Michigan.

34.     Around May 5, 2016, Plaintiff and the Wittenbachs entered into an informal husbandry agreement, whereby Plaintiff would send the Wittenbachs exotic ball pythons, the Wittenbachs would care for them, and would breed them and assist in marketing and selling of the snakes' offspring at the direction of the Plaintiff.

35.     Pursuant to the Parties' agreement Plaintiff would pay all costs incurred by the Wittenbachs to get the Parties' snake breeding enterprise operational.

36.     The Parties agreed that any snakes sent to the Wittenbachs by Plaintiff remained Plaintiff's property.

37.     The Parties further agreed that the offspring of Plaintiff's snakes remained Plaintiff's property.

38.     Initially, the Wittenbachs did not request any monetary compensation for their snake breeding efforts. Rather, Kyle Wittenbach stated to Brian Love that he wanted to learn the intricate processes and methods of exotic snake breeding, and that he also desired the opportunity to work with exotic snakes that he would not be able to otherwise afford.

39.     The Parties agreed that the Wittenbachs were to house, care for, and breed exotic ball pythons shipped to them by Plaintiff, and follow Plaintiff's instructions regarding which snakes to breed and how to preserve and cultivate the unique genetic markers that give the snakes their value.

40.     Prior to the Parties' Agreement, Plaintiff was breeding, and then selling, exotic ball pythons through morphmarket.com, an online marketplace for exotic reptiles (and of which Brian Love was a founding member).

41.     Plaintiff gave the Wittenbachs access to its seller account on morphmarket.com, and the Wittenbachs were to place ball pythons for sale through Plaintiff's account.

42.     Plaintiff directed the Wittenbachs regarding which snakes to sell, and Plaintiff determined the price to be charged for each snake.

43.     When the Wittenbachs placed Plaintiff's snakes for sale on morphmarket.com, the snakes were identified as belonging to Plaintiff.

44.     The Wittenbachs were responsible for answering any questions asked by prospective purchasers of the snakes regarding the snakes themselves.

45.     When a sale was consummated, the Wittenbachs would arrange to ship the snakes to the purchasers.

46.     Brian Love also personally arranged for sales of Plaintiff's snakes in the Wittenbachs' possession, utilizing his contacts and relationships in the exotic snake market.

47.      The snakes were sold based upon Brian Love's reputation in the market, and the Wittenbachs would not have been able to solicit as many sales of snakes but for their use of Plaintiff's account on morphmarket.com and their affiliation with Plaintiff and Brian Love.

48.     Snakes were frequently sold on payment plans, and the Wittenbachs would carry and manage accounts receivable for those sales.

49.     To facilitate the Wittenbachs' ability to raise and breed snakes, in early 2018 Plaintiff paid for the installation of two custom built barns at the Wittenbach Residence at a cost of approximately $15,000.00 total.

50.     The barns are insulated, and include gas and electrical service, fans, exhaust, and a heater.

51.     One barn was used to house the snakes. The second was used to raise rats. The rats served as both food for the snakes, as well as a supplemental income source for the Parties.

52.     Plaintiff provided all capital for, and paid all expenses incurred by, the Parties throughout the course of their snake breeding enterprise. Plaintiff supplied all snakes used for breeding, racks, cages, materials, and equipment used to house and care for the snakes, all feed and bedding for the rats, all shipping costs and administrative expenses, and all utilities for the Wittenbach Residence. An income and expense summary is attached as **Exhibit 1**, documenting

the costs paid by Plaintiff to get the snake breeding enterprise running. Plaintiff also gave the Wittenbachs a credit card to use for business expenses, for which Plaintiff paid.

53.     Of the costs described on **Exhibit 1**, many of those costs represent start-up costs incurred by Plaintiff purchasing equipment for the Wittenbachs to use in the Parties' snake breeding enterprise, including caging and incubators.

54.     Plaintiff incurred approximately **$225,315.00** in start-up costs, representing approximately $153,023.00 for snake purchases and $72,292.00 for caging, incubators, equipment, materials, and shipping and administrative expenses. Receipts and evidence of Plaintiff's start-up costs is attached as **Exhibit 2**.

55.     Around the time that Plaintiff installed the barns at the Wittenbach Residence, Brian Love concluded that the Parties' snake breeding enterprise would be much larger than he had initially anticipated, and he thought it appropriate for the Wittenbachs to receive a share of any future profits.

56.     Plaintiff and the Wittenbachs agreed that after Plaintiff was reimbursed for all of its start-up costs (including the installation of the pole barns), the Wittenbachs would receive a portion of the profits generated by sales of Plaintiff's snakes—regardless of whether the Wittenbachs or Plaintiff arranged the sales.

57.     Initially, Plaintiff offered the Wittenbachs 10% of the profits. As the enterprise grew, Plaintiff increased the Wittenbachs' percentage of profits to 25%, and then to 50% in early 2020, which the Wittenbachs expressed was "more than generous."

58.     Plaintiff also purchased personal items for the Wittenbachs. The Parties agreed and understood that these personal purchases were advances upon the Wittenbachs' expected share of future profits, and that the Plaintiff would be repaid for these advances.

59.     These purchases of personal items, or "advances" to the Wittenbachs, included a vehicle, auto insurance premiums, handguns, an air conditioning unit, appliances, merchandise for the Wittenbachs' daughters, vacations and other items.  Further, some of the advances constituted unauthorized charges to a credit card that Plaintiff had given the Wittenbachs to cover business expenses.

60.     In total, Plaintiff made advances to the Wittenbachs in the amount of **$52,990.00** (including the construction and installation of the barns). **Exhibit 1**. Examples of personal expenses advanced to the Wittenbachs are attached as **Exhibit 3**.

61.     The Parties agreed that once Plaintiff had recouped its investment in the snake breeding enterprise, and had recouped all of the "advances" made to the Wittenbachs, the Parties would split the profits from any sales of Plaintiff's snakes and rats, on a cumulative basis.

## II.     Plaintiff Sends Its Snakes to the Wittenbachs

62.     Pursuant to the Parties' contract, beginning in 2016 Plaintiff commenced shipping to the Wittenbachs snakes that Plaintiff had purchased, raised, and bred at Plaintiff's facility in Florida.

63.     Plaintiff sent its first shipment of snakes to the Wittenbachs on May 5, 2016.

64.     Plaintiff sent subsequent shipments of snakes to the Wittenbachs in December, 2016, February, 2017, and August, 2017. Shipping receipts and invoices for snakes purchased by Plaintiff are attached as **Exhibit 4**.

65.     In total, Plaintiff shipped snakes from Florida to the Wittenbachs with an estimated resale value of around $200,000.00. These were snakes that Plaintiff had purchased prior to its contract with the Wittenbachs, and the offspring of those snakes.

66.     After the August 2017 shipment, Plaintiff no longer maintained any snake inventory at its facility in Florida; all of Plaintiff's snakes were located at the Wittenbach Residence.

67.     Plaintiff then began purchasing snakes and arranging for those snakes to be sent directly to the Wittenbachs.

68.     From 2016 through 2020, Plaintiff spent $108,950.00 purchasing and shipping snakes to the Wittenbachs.

69.     The Wittenbachs would care for and breed the snakes pursuant to Plaintiff's instruction, and would post specific snakes for sale on morphmarket.com pursuant to Plaintiff's direction.

### III.     Defendants Terminate Their Relationship With Plaintiff But Refuse to Return The Majority of Plaintiff's Snakes, Keeping the Most Valuable Snakes for Themselves

70.     During 2020, business had ramped up significantly and was generating substantially more revenue than in previous years.

71.     In October 2020, Mr. Wittenbach's employment at Ferris State University was terminated.

72.     Around mid-November of 2020, Kyle Wittenbach demanded that the Wittenbachs receive 80% of all profits from the Parties' snake breeding enterprise.

73.     Kyle Wittenbach made this demand shortly after he had just received another shipment of snakes purchased by Plaintiff for $14,176.00.

74.     When Plaintiff refused Kyle Wittenbach's demand, he informed Plaintiff that the Wittenbachs no longer wished to continue their husbandry agreement with Plaintiff.

75.     The Wittenbachs were removed from the Plaintiff's morphmarket.com seller account in late November of 2020.

76.     On or about December 14, 2020, the Wittenbachs filed Articles of Organization with the State of Michigan for an entity known as Wittenbach Farms, LLC.

77.     Upon information and belief, Wittenbach Farms is in the business of breeding, raising, and selling ball pythons. Screenshots from its website and Facebook page are attached as **Exhibit 5**.

78.     The snakes being publicized and offered for sale by Wittenbach Farms are the property of Plaintiff.

79.     Upon information and belief, of all the snakes currently in the Defendants' possession, **only four do not belong to Plaintiff**. Kyle Wittenbach possessed two relatively low-value ball pythons prior to the Parties' Contract (which he retained for sentimental purposes as pets), and he purchased two more low-value more ball pythons from Plaintiff for $1,200.00 total. None of the four snakes owned by Kyle Wittenbach were ever used for breeding purposes in connection with the Plaintiff's business. This was at Plaintiff's express direction so as to avoid commingling Wittenbach's less valuable snakes with Plaintiff's higher valued snakes.

80.     By the end of 2020, Plaintiff had not yet broken even on its investment in the Parties' snake breeding enterprise.

81.     By the end of 2020, Plaintiff had invested approximately $326,878.00 in out-of-pocket costs into the Parties' snake breeding business, including snake purchases and the advances Plaintiff had made to the Wittenbachs. Plaintiff has only received $117,723.00 in income from snake and rat sales. **Exhibit 1**.

11

82.     Furthermore, upon information and belief, the Wittenbachs failed to report to Plaintiff all of the sales that they made during the period from 2016 to 2020.

83.     Upon information and belief, the Wittenbachs arranged for sales of snakes through means other than the morphmarket.com account, and failed to report those sales to Plaintiff.

84.     Plaintiff also learned that the Wittenbachs were selling rats without reporting those sales to Plaintiff.

85.     The vast majority of the value in the snake breeding enterprise constituted Plaintiff's snakes located at the Wittenbach Residence, because those snakes were the Plaintiff's primary investment into the enterprise and were the source of future sales.

86.     Plaintiff agreed that the Wittenbachs could terminate their husbandry agreement with Plaintiff if the Wittenbachs returned all of the Plaintiffs' snakes, including the snakes that Plaintiff had purchased and sent to the Wittenbachs, as well as those snakes' offspring.

87.     Kyle Wittenbach acknowledged and admitted that Plaintiff was entitled to retrieve all of the snakes that it had purchased, as well as the offspring produced, and asked Plaintiff if they could keep some of the snakes.  Kyle Wittenbach stated it would break his heart if Plaintiffs didn't give them some of the snakes.

88.     Kyle Wittenbach initially asked to keep 20% of the Plaintiff's snakes (constituting offspring of the snakes Plaintiff had purchased), and then later demanded 30% of the Plaintiff's snakes.

89.     Plaintiff refused Kyle Wittenbach's request to keep some of Plaintiff's snakes. Plaintiff offered Wittenbach the option to purchase some of the offspring snakes at a 50% discount. Wittenbach never identified any snakes that he wished to purchase.

12

90.     Any and all snakes housed at the Wittenbach Residence are the property of Plaintiff, with the possible exception of the aforementioned four snakes owned by Kyle Wittenbach.

91.     In early December, Plaintiff contacted Family Reptiles, LLC ("Family Reptiles") to arrange for Family Reptiles to travel to the Wittenbach Residence and retrieve Plaintiff's snakes and equipment.

92.     Plaintiff paid Family Reptiles $4,167.00 to retrieve Plaintiff's snakes and equipment from the Wittenbach Residence.

93.     On December 7, 2021, Kyle Wittenbach sent an email to Family Reptiles and Brian Love enclosing a spreadsheet list of all the snakes that the Wittenbachs would be purportedly remitting to Family Reptiles. **Exhibit 6**.

94.     Plaintiff noticed that the list was obviously incomplete.

95.     Plaintiff also noted that the nomenclature identifying the snakes was different than in previous lists, which could have the effect of obscuring the snakes' identities.

96.     Brian Love asked Wittenbach to send Plaintiff a list of the snakes that the Wittenbachs intended to keep and purchase from Plaintiff.

97.     Kyle Wittenbach responded to Brian Love on December 9, stating "I've sent the necessary list," apparently referencing the list send December 7 which only disclosed snakes that the Wittenbachs intended to return to Plaintiff. **Exhibit 7**. The Wittenbachs have never supplied Plaintiff with a list of the snakes that they kept.

98.     On December 28, 2020, Elizabeth Wisneski, the owner of Family Reptiles, arrived at the Wittenbach Residence to retrieve Plaintiff's snakes and equipment. See affidavit of Wisneski, attached as **Exhibit 8**.

99.     The Wittenbachs remitted to the transportation company only a portion of the snakes at the Wittenbach Residence, including: 61 female adults, 21 male adults, 14 "holdbacks" (snakes that will be bred but that had not yet reached sexual maturity), and 120 babies.

100.    All of the baby snakes returned by the Wittenbachs were snakes intended for sale; the Wittenbachs retained all of the baby snakes that Plaintiff had identified as potential breeders (and are therefore significantly more valuable).

101.    The Wittenbachs also returned only three snake racks and one incubator.

102.    The Wittenbachs kept the most valuable of Plaintiff's snakes for themselves.

103.    Plaintiff and the transportation company representative also observed that many of the snakes that the Wittenbachs returned appeared unhealthy. **Exhibit 8**.

104.    When the transportation company representative commented on the snakes' poor condition, Kyle Wittenbach responded that he had a "rodent problem" and was unable to feed them properly. **Exhibit 8**.

105.    Upon information and belief, the Wittenbachs did not adequately care for the snakes that they intended to return to Plaintiffs, and instead sold their rats and properly cared for the snakes that they intended to steal for themselves.

106.    At least one of Plaintiff's snakes apparently died in the Wittenbachs' care for unknown reasons. On December 26, 2021, Kyle Wittenbach sent Brian Love a text message with a picture stating that the "Pinstripe Pied"—one of the snakes included on Wittenbach's list of snakes to be returned to Plaintiff—had died, and that Kyle Wittenbach was "not sure why." **Exhibit 9**.

107.    Plaintiff also noted that some of the snakes returned by the Defendants did not match the inventory spreadsheet provided by the Defendants (**Exhibit 6**).

108.    For example, the Pastel Yellowbelly Gene X Het Pied snake included on the inventory list was not returned to Plaintiff; instead, the Defendants mislabeled and returned a Pastel Het Pied, which is worth significantly less.

109.    On December 27, 2021, Deana Love sent Kyle Wittenbach an email pointing out that the list of snakes that the Wittenbachs planned to remit to Family Reptiles did not include 31 (in actuality 33) of the snakes that Plaintiff had purchased and sent to the Wittenbachs. Deana Love stated that regardless of any agreement for the Wittenbachs to purchase snake offspring from Plaintiff, the snakes purchased by Plaintiff "come home because they are our assets." **Exhibit 10**.

110.    The Wittenbachs never responded to Deana Love's December 27 email, never returned the snakes that Plaintiff had purchased, and never remitted any payment for any of the snake offspring that the Wittenbachs had failed to remit to Family Reptiles. The Wittenbachs also never provided a list of the snakes they kept, despite Plaintiff's repeated requests.

111.    Based upon the inventory and sales records provided to Plaintiff by the Wittenbachs, the Defendants remain in possession of at least 33 high-value snakes purchased by the Plaintiff. A list of those snakes (the "Key Snakes"), and their estimated value, is attached as **Exhibit 11**. In total, the Key Snakes are estimated to be worth approximately $572,000.00.[1]

112.    In addition to the Key Snakes, Defendants are also in possession of dozens of the offspring of Plaintiff's snakes, which also belong to Plaintiff. Defendants have continued to breed Plaintiff's snakes, and in possession of "clutches" of snake eggs, which also belong to Plaintiff.

---

[1]    These snakes are so valuable because they are proven breeders with very rare and desirable genetic traits. The estimate of their values, as described in **Exhibit 11**, is based upon the expected value of the snakes' offspring after one year of breeding, with an average of 6 eggs per "clutch" (the industry term for the eggs produced by a female during one gestational period). The snakes' individual resale value—excluding their value as breeders—is estimated to be approximately 20% of that figure, or around $114,400.

Plaintiff has attempted to compile a list of the snake inventory at the end of 2020 based upon the inventories provided by the Defendants, noting snakes that were not returned to Plaintiff. This list, attached as **Exhibit 12**, is likely incomplete, but demonstrates the significant number of snakes that the Defendants stole from Plaintiff.

113.    Defendants are currently in possession of at least 100 snakes belonging to Plaintiff.

114.    Plaintiff estimates that the total value of the snakes stolen by Defendants exceeds $600,000.00.

115.    Defendants are selling Plaintiff's snakes for the Defendants' own profit.

116.    Defendants are using the equipment, materials, improvements, and snakes purchased by Plaintiff to compete against Plaintiff through their operation of Wittenbach Farms.

117.    Upon information and belief, Mr. Wittenbach has been falsely representing to potential customers and trade associates that he was a part-owner of Plaintiff.

118.    Mr. Wittenbach has never been an owner of Plaintiff.

119.    The Wittenbachs terminated their relationship with Plaintiff because the Wittenbachs wanted to steal the Plaintiff's snakes and business operations for themselves, and did not want to reimburse Plaintiff for its investment in the Parties' snake breeding enterprise and Plaintiff's advances to the Wittenbachs.

120.    On May 4, 2021, Plaintiff demanded that the Defendants return all of the snakes and eggs belonging to the Plaintiff, and to reimburse Plaintiff for all of the expenses it incurred pursuant to the Parties' snake breeding operation. That email is attached as **Exhibit 13**.

121.    The Defendants never responded to the email of May 4, 2021.

122.    Defendants are currently selling Plaintiff's snakes for the Defendants' own profit.

123.    Plaintiff will have no recourse to recover its snakes that Defendant sells, or which die in Defendants' care.

124.    Due to unique and individualized nature of the snakes, Plaintiff will suffer irreparable harm if it is not able to prevent Defendants from selling them, or otherwise concealing them or failing to properly care for them.

125.    Further, due to the Defendants' prior conduct—including mislabeling snakes, refusing to provide a complete inventory list, underfeeding and improperly caring for snakes, and allowing at least one snake to die while in Defendants' care—there exists a real and imminent danger of irreparable injury to Plaintiff.

## COUNT I: DECLARATORY JUDGMENT

126.    Plaintiff incorporates all preceding allegations by reference as if fully restated herein.

127.    The Defendants are in unlawful possession of Plaintiff's snakes, including snakes that Plaintiff purchased and the offspring of those snakes.

128.    The Defendants are in unlawful possession of equipment and materials purchased by Plaintiff to facilitate the Parties' snake breeding enterprise, including racks and incubators.

129.    The Defendants have refused to return the aforementioned snakes, equipment, and materials, and are falsely asserting ownership of the Plaintiff's personal property

130.    Mr. Wittenbach has been falsely representing that he was an owner of Plaintiff.

131.    Mr. Wittenbach was never an owner of Plaintiff.

132.    An actual controversy exists as to whether Plaintiff is the rightful owner of the aforementioned snakes, equipment, and materials, and as to whether Mr. Wittenbach was ever an owner of Plaintiff.

WHEREFORE, Plaintiff requests that the Court declare the rights of the Parties and enter Declaratory Judgment affirming that:

a.) Plaintiff is the rightful owner of all snakes purchased by Plaintiff;

b.) Plaintiff is the rightful owner of the offspring of all snakes purchased by Plaintiff;

c.) Plaintiff is the rightful owner of all equipment and materials, including racks and incubators, purchased by Plaintiff for the Parties' snake breeding enterprise;

d.) Mr. Wittenbach has never been an owner of Plaintiff;

e.) Defendants have no right to retain or use any property or assets belonging to Plaintiff, including Plaintiff's name and goodwill;

f.)  and granting any such additional relief that the Court finds just.

## COUNT II: CLAIM AND DELIVERY/REPLEVIN vs. ALL DEFENDANTS

133.    Plaintiff incorporates all preceding allegations by reference as if fully restated herein.

134.    Defendants are currently and unlawfully in possession of personal property belonging to Plaintiff, specifically a.) all snakes purchased by Plaintiff and remitted to the Wittenbachs' possession, b.) the offspring and eggs of all snakes purchased by Plaintiff, and c.) all of the equipment and materials purchased by Plaintiff for the Parties' snake breeding enterprise.

135.    Defendants have refused to remit to Plaintiff's custody and control the aforementioned personal property of the Plaintiff.

136.    Plaintiff is being damaged by Defendants' unlawful detention of their personal property.

137.    Plaintiff's damages include the loss of snakes sold or destroyed by Defendants, the loss of Plaintiff's ability to sell or breed its snakes, the inability of the Plaintiff to recover its

investment, and the loss of use of the equipment and materials purchased by Plaintiff for the purpose of breeding and caring for snakes.

138. Plaintiff is entitled to immediate possession of its snakes.

139. This Court may grant equitable relief to Plaintiff, including a pre-judgment order awarding immediate possession to Plaintiff, pursuant to Fed. R. Civ. Pro. 64 and MCL 600.2920.

140. Plaintiff has a demonstrable need for immediate possession of its snakes.

141. Defendants are actively engaged in the marketing and sale of these animals, and are likely to sell, harm or otherwise dispose of the snakes before judgment is entered in this matter.

142. By refusing to return Plaintiff's snakes, refusing to provide a complete inventory to Plaintiff, and by mislabeling snakes returned to Plaintiff, Defendants have demonstrated that they are also likely to attempt to conceal or transfer them, or otherwise undertake surreptitious action to prevent Plaintiff from recovering possession of them.

143. Defendants have also failed to properly care for some of the snakes, and there is a substantial likelihood that the snakes will die if left in the Defendants' care until judgment enters, particularly if the Defendants believe that they are likely to lose possession of the snakes as a result of this lawsuit.

WHEREFORE Plaintiff requests that the Court:

a.) Grant Judgment awarding to Plaintiff possession of all snakes purchased by Plaintiff, as well as the offspring and eggs produced by snakes purchased by Plaintiff, within the Defendants' possession or control;

b.) Grant Judgment awarding to Plaintiff possession of all materials and equipment purchased by Plaintiff for the Parties' snake breeding enterprise, including all racks and incubators;

c.) Grant Judgment awarding damages to Plaintiff in an amount sufficient to compensate Plaintiff for the damage caused by Defendants' unlawful detention of Plaintiff's snakes and the offspring of Plaintiff's snakes, including damages for any snakes sold or destroyed;

d.) Enter an Order granting immediate pre-judgment possession of all snakes and eggs owned by Plaintiff and within the Defendants' possession or control; and

e.) Award to Plaintiff its costs, attorney fees, and interest, and any other relief that the Court finds just.

## COUNT III: ACCOUNTING vs. ALL DEFENDANTS

144.    Plaintiff incorporates all preceding allegations by reference as if fully restated herein.

145.    Plaintiff and the Wittenbachs entered into a contractual husbandry agreement involving mutual demands and transactions.

146.    Plaintiff paid all costs incurred by the Parties in the creation and operation of the Parties' snake breeding enterprise, including start-up costs and purchase of all snakes.

147.    The Wittenbachs were obligated to assist Plaintiff in the marketing of snakes for sale, and to remit all sale proceeds to Plaintiff. Once all of Plaintiff's costs were repaid, Plaintiff and the Wittenbachs would split the profits determined on a cumulative basis from the sale of snakes and rats.

148.    The Wittenbachs frequently received cash payments for sales of Plaintiff's snakes, and would keep those cash payments in a safe located at the Wittenbach Residence.

149.    The Wittenbachs have breached the Parties' husbandry agreement by selling snakes and rats without reporting those sales to Plaintiff, and without remitting the proceeds from such sales to Plaintiff.

150.    Upon information and belief, the Wittenbachs have transferred some or all of Plaintiff's snakes and property to Wittenbach Farms, and are carrying out snake breeding business operations through Wittenbach Farms.

151.    Plaintiff is uncertain as to the amount it is entitled to recover from Defendants.

152.    Plaintiff has no adequate remedy at law to determine and recover its damages from Defendants' unilateral and unreported sales of snakes and rats.

153.    Plaintiffs demand that the Defendants provide a full accounting of all sales of snakes and rats made by Defendants from the inception of the Parties' husbandry agreement to the present, and further remit to Plaintiff any sale proceeds that have not previously been reported and remitted to Plaintiff.

WHEREFORE Plaintiff requests that the Court grant Judgment in favor of Plaintiff compelling Defendants to provide a full accounting of all sales of snakes and rats made by Defendants from the inception of the Parties' husbandry agreement to the present, further Order Defendants to remit to Plaintiff any sale proceeds that have not previously been reported and remitted to Plaintiff, and award to Plaintiff its costs, attorney fees, and interest, and any other relief that the Court finds just.

### COUNT IV: STATUTORY AND COMMON LAW CONVERSION vs. ALL DEFENDANTS

154.    Plaintiff incorporates all preceding allegations as if fully restated herein.

155.    The Wittenbachs have converted Plaintiff's property—specifically the snakes purchased by Plaintiff and the offspring of those snakes, as well as equipment, materials, and supplies purchased by Plaintiff to facilitate the snake breeding enterprise—to the those Defendants' own use.

156.   Wittenbach Farms has received and possesses Plaintiff's property, and has actual knowledge that the Plaintiff's property was converted.

157.   Plaintiff has demanded return of its property.

158.   Defendants have refused to return most of the Plaintiff's property—including approximately 100 snakes, the clutches of snake eggs currently incubating, and the vast majority of the Plaintiff's equipment, materials, and supplies.

159.   To the extent that Plaintiff is unable to recover possession of its snakes—either because Defendants have sold or concealed the snakes, or allowed the snakes to die—Plaintiff is entitled to recover its damages sustained as a result of the Defendants' conversion of Plaintiff's property.

160.   Further, under MCL 600.2919a, Plaintiff is entitled to recover three times the amount of damages sustained as a result of Defendants' conversion of its property, as well as Plaintiff's costs and attorney fees.

WHEREFORE Plaintiff requests that the Court grant Judgment in favor of Plaintiff awarding damages to Plaintiff in the amount of three times the value of any personal property (including snakes, equipment, materials, and supplies) belonging to Plaintiff that Defendants converted and fail to return to Plaintiff, awarding Plaintiff its costs, attorney fees, and interest, and granting any other relief that the Court deems just.

## COUNT V: BREACH OF CONTRACT vs. THE WITTENBACHS

161.   Plaintiff incorporates all preceding allegations by reference as if fully restated herein.

162.    Plaintiff and Defendants entered into a contractual husbandry agreement, whereby Plaintiff would supply all snakes, and pay all costs, for Defendants to engage in a snake breeding enterprise at the Wittenbach Residence.

163.    Pursuant to the Parties' agreement, Plaintiff would be reimbursed for all costs, including the cost of snakes and all equipment/infrastructure provided to Defendants.

164.    Pursuant to the Parties' agreement, Plaintiff would also be reimbursed for all purchases made for the Defendants' personal benefit, or "advances."

165.    Once all of Plaintiff's costs and the advances to Defendants were repaid, Plaintiff and Defendants would split the profits from all sales of snakes and rats.

166.    Defendants breached the Parties' contract by: a.) selling snakes and rats without reporting those sales to Plaintiff or remitting the sale proceeds to Plaintiff; b.) refusing to return all of Plaintiff's snakes after Defendants terminated the Parties' relationship, and b.) failing to fully reimburse Plaintiff for Plaintiff's costs and the advances made to Defendants.

167.    Plaintiff has been damaged by the Defendants' breach of the Parties' contract.

168.    Plaintiff's damages include: a.) all sale proceeds that Defendants failed to report or remit to Plaintiff; b.) the value of all Plaintiff's snakes that Defendants failed to return to Plaintiff; and c.) the Plaintiff's costs paid to create and operate Defendants' snake breeding enterprise, and the Plaintiff's advances to Defendants, that have not been reimbursed through revenue generated by the snake breeding enterprise.

169.    Plaintiff is entitled to an award of damages against the Defendant in an amount sufficient to compensate Plaintiff for Defendants' breach of the Parties' contract.

WHEREFORE Plaintiff requests that the Court enter Judgment in favor of Plaintiff awarding damages to Plaintiff in the amount of Plaintiff's damages sustained as a result of the

Defendants' breach of contract, award Plaintiff its costs, attorney fees, and interest, and grant any other relief that the Court deems just.

## COUNT VI: UNJUST ENRICHMENT vs. ALL DEFENDANTS

170.   Plaintiff incorporates all preceding allegations as if fully restated herein.

171.   This Count is pleaded in the alternative to Count V.

172.   If the Court finds there is no contract covering the subject matter of this Complaint, then Defendants have retained benefits provided to them by the Plaintiff.

173.   The benefits retained by the Defendants include, but are not necessarily limited to: a.) the operating costs incurred by Plaintiff's funding of the snake breeding enterprise at the Wittenbach Residence; b.) materials, equipment, and other start-up costs paid by Plaintiff to establish the snake breeding enterprise at the Wittenbach Residence; c.) advances paid to the Defendants; and d.) snakes remitted to the care and custody of the Defendants.

174.   Defendants have failed and refused to pay Plaintiff for the aforementioned benefits.

175.   Plaintiff has no adequate remedy at law to recover just compensation for the benefits provided to Defendants.

176.   Equity requires that Defendants be made to fairly compensate Plaintiff for the value of the benefits they have received from Plaintiff.

WHEREFORE Plaintiff requests that the Court enter Judgment in favor of Plaintiff and award damages in an amount sufficient to fully compensate Plaintiff for the value of the benefits conferred on Defendants, award to Plaintiff its costs, attorney fees, and interest, and award any other relief that the Court finds just.

Dated:  May 19, 2021

Respectfully submitted,

RHOADES McKEE PC
Attorneys for Plaintiff

By: _____
Bruce A. Courtade (P41946)
Patrick E. Sweeney (P79822)
Business Address:
    55 Campau Avenue, N.W., Suite 300
    Grand Rapids, MI 49503
    Telephone:  (616) 235-3500

## **VERIFICATION**

I, Brian Love, declare as follows:

1.    That I am the owner of the Plaintiff in this matter, Love Reptiles, LLC.

2.    That I have personal knowledge of the facts stated in this Complaint, and am competent to testify as to the matters stated herein.

3.    That I declare under penalty of perjury that the factual statements in this Complaint concerning myself, Love Reptiles, LLC, and the interactions between Love Reptiles, LLC and Kyle and Heather Wittenbach are true and correct.

Executed on: May 14, 2021

_____
Brian Love

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated:  May 19, 2021

RHOADES McKEE PC
Attorneys for Plaintiff

By: _____

Bruce A. Courtade (P41946)
Patrick E. Sweeney (P79822)
Business Address:
55 Campau Avenue, N.W., Suite 300
Grand Rapids, MI 49503
Telephone:  (616) 235-3500